## COPPER KING OF ARIZONA

*v.*

## DANIEL ROBERT.

[Decided July 13th, 1909.]

1. It is the practice of the court of chancery, arising out of its general jurisdiction for the purpose of discovery, to allow a party to apply before the hearing of a suit, for the inspection of documents, relevant to the matters in question, which are in the possession or power of the opposite party; and this discovery is allowed to a defendant, when necessary to

enable him to complete his defence; but it is not unlimited, and will be extended only to such documents as appear to be necessary for the purpose of enabling the suitor to plead properly.

2. The circumstance of the documents being abroad is no answer to an application for their production; but, in such a case reasonable time will be given the party to bring them into the state, and refusal to comply with the order will be considered the same as if the documents were here and the party refused to produce them.

---

On petition to compel the production of the books of the complainant corporation for inspection by defendant.

*Messrs. Dungan & Reger,* for the petitioner.

*Mr. Pierre F. Cook, contra.*

WALKER, V. C.

The late Daniel Robert filed a demurrer in this cause which was overruled. He died pending decision on the demurrer, and Angeline Robert, his executrix, was made a party defendant in his stead. She claims that she has no knowledge of the facts alleged in the amended bill and is unable to formulate a proper pleading without an examination and inspection of the books of the complainant, a corporation organized under the laws of the Territory of Arizona and which has no office in this state. She avers that on June 10th, 1909, her solicitor called upon the solicitor of the complainant at his office in Jersey City and requested from him permission to examine and inspect the books of the complainant then in his possession (not stating what books, if any, were in his possession), and that such permission was refused. She says she believes that the suit was never authorized by the corporation, but that it has been brought in its name by individuals who had no authority, and that in 1904 all the property and assets of the complainant were sold and that thereupon it ceased to transact business. The prayer of the petition is that this court compel the complainant to bring into this state all the minute books, stock books, transfer books, books of account, including cash books, day books, journals, ledgers and all other books, receipts, documents and vouchers showing the business

transactions of the complainant from its incorporation to the present time, and to permit the attorney and solicitor of the petitioner to make an examination thereof under such restrictions as the court may impose.

Section 44 of the Corporation act is invoked as authority for the order prayed for. An examination of that section will show that it gives this court authority only to summarily order brought into this state the books of corporations organized under our laws. This being so, the section is not available on the present application.

But, the petitioner further urges that, irrespective of the statute, this court has the inherent power to direct the complainant to give her an inspection of its books, and cites *Lawless v. Fleming, 56 N. J. Eq. (11 Dick.) 138, 815,* as authority. The case bears out the petitioner's contention. Said the court of errors and appeals in that case (at *p. 816*) :

"The right of the court of chancery to make such an order cannot be questioned, and has long been settled both by established custom and well-known authority. It is one of the inherent powers of a court of equity."

In *Dan. Ch. Pl. & Pr. (6th Am. ed.)* it is stated that it is the practice of the court of chancery to allow a party to apply before the hearing of a suit, for the production of documents relevant to the matters in question, which are in the possession or power of the opposite party; that this power to order the production of documents arises out of the general jurisdiction for the purpose of discovery, which, in all proceedings in equity, constitutes an important feature, and, in some instances, forms, as it were, the very foundation for the interference of the court; that the mere circumstance of the documents being abroad is no answer to an application for their production, but in such a case, reasonable time is given the party to bring them into the country, and refusal to comply with the order is considered the same as if the documents were here and the party refused to produce them; that where discovery from the complainant, either concerning matters of fact or the contents of documents was necessary to a defendant for the purpose of enabling him to complete his defence, such discovery was formerly had by means of a cross-

bill, but under the present practice the court may make an order
for the production by the complainant of such documents in his
possession or power relating to the matters in question in the
suit as the court shall think right, but this discovery is not un-
limited and will be extended only to such documents as appear
to be necessary for the purpose of enabling the suitor to plead
properly.  *Dan. Ch. Pl. & Pr. (6th Am. ed.), \*1817 et seq.*

In the light of the rule above mentioned, I do not see how the
petitioner is entitled to an inspection of all the books, receipts,
documents and vouchers showing the business transactions of
the complainant from its incorporation to the present time as
prayed for.

Let us see now what are the allegations of the bill, and what
its prayer, so that we may ascertain what documents of the com-
plainant the defendant needs to inspect.

The bill avers that Daniel Robert, the defendant's testator,
was treasurer of the complainant corporation, and that he, to-
gether with its president, controlled the financial policy of the
company; that immediately after its organization the complain-
ant became financially straitened and sorely in need of funds
to carry on its business, and thereupon the defendant's decedent,
in conjunction with the president and his brother, entered into
a financial policy that would accrue to their own private benefit
and the injury of the complainant, by causing it to execute a
mortgage to Richard D. Boitel (brother of the president), trus-
tee, for $10,000, the actual consideration therefor being $4,000
loaned, which was subsequently repaid with a bonus of $4,000,
and by causing the corporation to execute another mortgage to
the same mortgagee, trustee, covering the same land for $10,000,
the actual consideration therefor being $4,500, and that the de-
fendant's testator participated in the bonuses with the other
parties, and that he became and (his estate) now is liable to the
complainant for all loss occasioned thereby; that the complain-
ant is entitled to an account of the moneys received by the de-
fendant as mentioned, or by any other of the directors of the
complainant corporation or any other person with his knowl-
edge or concurrence.  The prayer is that the defendant may be

decreed to account for such money as was paid to or received by him (in his lifetime), or paid to or received by any other agent or director of the complainant company or any other person with his consent, out of the assets of the complainant by way of bonus over and above any sum or sums actually advanced to it under the mortgages or either of them.

The minute book will show whether or not the suit was authorized to be brought by action of the board of directors, and the defendant is entitled to an inspection of that book. The defendant is also entitled to an inspection of such entries in any other books of the corporation as show the mortgage transactions to which reference has been made. Also, she is entitled to an inspection of such receipts, documents and vouchers as bear upon the particular transactions.

An order will be advised that the complainant produce at the office of its solicitor in Jersey City, for the inspection of the defendant, its minute book, and such other books as contain entries which show the mortgage transactions, and such receipts, documents and vouchers as bear upon those transactions. Inspection must be restricted to an examination of such data in the books and documents to be produced as relate to the particular transactions which are made the subject-matter of the bill of complaint. The defendant will have twenty days in which to plead or answer the bill after production and inspection by her or her solicitor, and in the meantime all proceedings in the cause shall be stayed. By demanding the production of more documents than she is entitled to inspect the defendant has disentitled herself to the costs of this motion. The order will be made without costs to either party as against the other.